UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| MELISSA CAROL GREENHAW, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:13-cv-40-HSM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa Carol Greenhaw ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 15 & 17] with supporting briefs [Docs. 16, 18 & 20]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 15] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 17] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her applications for DIB and SSI on January 27, 2011, alleging disability as of August 4, 2007 (Transcript [Doc. 10] ("Tr.") 141, 148). Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before the ALJ (Tr. 78, 87, 90, 91). The ALJ held a hearing on December 17, 2012, during which Plaintiff was represented by an attorney (Tr. 42). The ALJ issued an unfavorable decision on January 15, 2013, finding Plaintiff was not disabled because she was capable of making a successful adjustment to other

work that existed in significant numbers in the national economy (Tr. 26-36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action seeking judicial review of the Commissioner's unfavorable decision [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was 37 years old on her alleged disability date, August 4, 2007 (Tr. 34). Plaintiff completed a tenth grade education (Tr. 49, 194), and she is able to read and write (Tr. 50). She has past relevant work experience as a machine feeder, front desk clerk, merchandiser, laborer, security guard, and convenience store clerk (Tr. 66, 202-09). Plaintiff's most recent employment was as a merchandiser where she primarily built and installed new store displays (Tr. 202-03). Plaintiff's impairments are the result of a work-related injury that took place on August 4, 2007, when a 120-pound beam fell on her (Tr. 46).

### B.    Medical Records

Only the portion of Plaintiff's medical records relevant to the parties' arguments will be addressed herein, but all relevant records have been reviewed.

On August 6, 2007, two days after her work accident, Plaintiff had x-rays taken of her right shoulder, thoracic spine, and lumbar spine at the Phelps County Regional Medical Center, and none of the x-rays showed any evidence of fracture or abnormality (Tr. 440-42). An MRI from October 23, 2007, however, showed degenerative disk disease at the C3-4 vertebrae with a small central posterior non-compressive disk protrusion, a 6-millimeter perineural cyst in the right C6-7 intervertebral neural foramen, and a 7-millimeter perineural cyst in the left C7-T1 intervertebral neural foramen (Tr. 450). An MRI dated November 8, 2007, showed L2-3

moderate posterior annular bulging; L4-5 disk desiccation with left posterior foraminal disk protrusion with annular tear and neural impingement of the exiting left L4 nerve root; mild facet arthrosis at L3-4, L4-5, and L5-S1; and hyperintensity in the L3 vertebral body suggestive of atypical hemangioma (Tr. 448).

As the records of Richard Fishbein, M.D., Jeffrey E. Hazlewood, M.D., Karen M. Williams, M.D., and Deborah J. Morton, M.D. are significant to the issues raised by Plaintiff, their records will be briefly summarized below.

### 1. Dr. Fishbein

On June 5, 2008, Plaintiff had an independent medical evaluation with Dr. Fishbein, who reviewed Plaintiff's previous records before making his own assessment (Tr. 255-59). Dr. Fishbein found that Plaintiff ambulated with an antalgic gait and utilized a cane; had a slow and guarded range of motion as well as poor posture; and experienced tenderness to palpation over the lumbar musculature (Tr. 259). Plaintiff's sitting straight-leg test was mildly positive with pain in her lower back, and the C-5 backward extension caused pain in her muscles (Tr. 259). Dr. Fishbein opined that Plaintiff's left shoulder, neck, and low back injuries were related to her work, that she had not reached maximum medical improvement, and that she was "medically unable to return to any form of employment." (Tr. 259). Dr. Fishbein stated that Plaintiff needed to have back surgery, needed to see another neurosurgeon, and needed to continue to seek symptom-relieving measures such as physician care, analgesics, injection, rest, and occupational/physical therapy (Tr. 259).

### 2. Dr. Hazlewood

Plaintiff's initial evaluation with Dr. Hazlewood occurred on June 29, 2009 (Tr. 260-65). He noted that Plaintiff experienced pain in the lumbar region as well as the left lower extremity

("LLE") (Tr. 261). Plaintiff described her lumbar pain as a constant ache or burn and the LLE pain as pinching (Tr. 261). Plaintiff was taking Lortab at the time (Tr. 261).

Plaintiff had several follow-up visits with Dr. Hazlewood from July 2009 to June 2010 (Tr. 453-65). On July 20, 2009, Dr. Hazlewood noted that Plaintiff's pain in her lower back, mid-back, and left leg were no better, citing an average pain level of six to seven out of ten (Tr. 463). Dr. Hazlewood's impression, based on the examinations given that day, included chronic low back pain with non-radicular referral down the LLE; a disk protrusion at L4-5; significant pain behavior with previous positive Waddell's signs; obesity; and gait dysfunction (Tr. 463-64). At this visit, Dr. Hazlewood recommended that Plaintiff continue opiate treatment no more than 84 Lortab tablets per month (Tr. 464). Dr. Hazlewood also opined that any kind of invasive procedure or further therapy would not be of benefit to Plaintiff (Tr. 464).

On August 17, 2009, Plaintiff had another follow-up visit with Dr. Hazlewood (Tr. 459-62). Plaintiff's lower back and left leg pain had not improved, and she reported that the pain worsened with prolonged lying, sitting, walking, standing, and bending (Tr. 459). Plaintiff also reported having less pain in the cervical and left shoulder girdle region (Tr. 459). A previous MRI showed a bulging disc and disc protrusion at C3-4 (Tr. 459). Plaintiff stated that nothing helped her pain except for medication, specifically, Lortab (Tr. 459). After this exam, Dr. Hazlewood recommended continued opiate treatment, albeit reduced opiate use from the past, and he again stated that Plaintiff was not a good surgery candidate (Tr. 460). Dr. Hazlewood noted that he gave Plaintiff a sample of Cymbalta, as he believed Plaintiff was experiencing depression (Tr. 460). Additionally, Dr. Hazlewood completed an addendum in which he assigned Plaintiff a 5% whole person impairment rating due to the lower back pain and disc

protrusion (Tr. 460). Dr. Hazlewood did not recommend permanent restrictions for Plaintiff from a work standpoint (Tr. 460).

Plaintiff also had an EMG study, which Dr. Hazlewood had recommended, on August 17, 2009 (Tr. 461-62). Motor testing rated five out of five for strength in the bilateral lower extremities, and the electrodiagnostic studies of the LLE were normal with no evidence of a left lumbrosacral radiculopathy, sciatic neuropathy, focal peroneal, tibial, or sciatic neuropathy, or generalized polyneuropathy based on the one extremity examination (Tr. 461-62).

Plaintiff's next follow-up visit with Dr. Hazlewood was on September 14, 2009. At this point, Robaxin and Cymbalta had been added to Plaintiff's medications (Tr. 458). Plaintiff reported that the medication was definitely helping, and she reported that her pain was three to five on a scale of ten (Tr. 458). Plaintiff reported that the medication allowed her to complete chores that had previously been impossible for her (Tr. 458). Dr. Hazlewood recommended that Plaintiff continue opiate treatment, but he urged her to reduce her Robaxin intake from a whole tablet to a half tablet and strongly urged her not to exceed 75 Lortab tablets per month (Tr. 458).

Between Plaintiff's September and November visits, Dr. Hazlewood sent a letter to an insurance company confirming Plaintiff's 5% whole person impairment (Tr. 457). He added, however, that he could not identify the cause of Plaintiff's pain (Tr. 457). Unfortunately, he lamented, it was likely that Plaintiff would continue to complain of pain, even though Plaintiff had no permanent disability (Tr. 457).

On November 9, 2009, Plaintiff had her next follow-up appointment with Dr. Hazlewood (Tr. 456). Plaintiff's pain rating went up to five or six on a scale of ten, and she reported that the pain in her left shoulder had increased (Tr. 456). Dr. Hazlewood diagnosed Plaintiff with chronic lower back pain, but he added opioid dependency to his diagnosis as well (Tr. 456). He

ordered a drug screen for Plaintiff's next follow-up visit, which would take place in three months (Tr. 456).

On January 27, 2010, Plaintiff again returned to Dr. Hazlewood's office (Tr. 455). Plaintiff reported that the TENS unit was helping with her pain, in addition to the medications (Tr. 455). Dr. Hazlewood ordered that Plaintiff have a Comprehensive Metabolic Panel before the next visit, as Plaintiff had not had any blood work done in over a year (Tr. 455). Plaintiff did not have this blood work completed until February 2010, but all results came back as within normal limits (Tr. 453).

Plaintiff's last formal follow-up visit with Dr. Hazlewood was on April 21, 2010 (Tr. 454). Plaintiff reported that the TENS unit was continuing to help manage her pain, and she gave a pain rating of four to seven on a scale of ten (Tr. 454). Dr. Hazlewood recommended another follow-up visit in three months (Tr. 454). However, only progress notes followed this visit, and Plaintiff's contact with Dr. Hazlewood's office ceased within two months of the last visit (Tr. 453). A progress note dated June 18, 2010 indicates Dr. Hazlewood's office contacted Plaintiff regarding financial arrangements through self-pay or private insurance for continued treatment after Plaintiff settled her worker's compensation claim (Tr. 453). There are no further entries regarding any visits with Dr. Hazlewood.

### 3.  Dr. Williams

Plaintiff apparently began to see Dr. Williams sometime in 2008 (Tr. 540), although records of her treatment with Dr. Williams from only May 2009 through October 2012 are in the record (Tr. 346-78, 528-539). Dr. Williams's records first mention Plaintiff having lower back pain on August 18, 2009 (Tr. 364). Plaintiff was diagnosed with degenerative disc disease on a consistent monthly basis from October 2009 through February 2011 (Tr. 347-62). On February

2, 2011, still in Dr. Williams's care, Plaintiff had an MRI of her lumbar spine and was diagnosed with a small left foraminal disc bulge at L4-5; a nonspecific 9 millimeter lesion in the L3 vertebral body; and mild degenerative disc disease at L2-3 (Tr. 366).

On April 6, 2011, Plaintiff had an appointment with Dr. Williams for an ear infection and to refill her medications (Tr. 538). On May 9, 2011, during another follow-up appointment, Dr. Williams assessed Plaintiff with hypertension, anxiety, and thyroid disease, and Dr. Williams refilled her prescriptions (Tr. 537). On July 6, 2011, Dr. Williams added chronic back pain to her assessment of Plaintiff, but she noted that Plaintiff was "doing well" (Tr. 536). On August 19, 2011, Plaintiff saw Dr. Williams for a sinus infection (Tr. 535). Plaintiff returned to Dr. Williams on September 15, 2011 and reported that she was better since her last appointment, but she was still having cold symptoms (Tr. 534).

On October 20, 2011, Plaintiff reported to Dr. Williams that she had fallen the day before and had scraped her knee (Tr. 533). Plaintiff saw Dr. Williams again on December 27, 2011 for a refill of her medications, and she complained of swelling in her knee (Tr. 532). Plaintiff next saw Dr. Williams for a checkup and medication refills on March 14, 2012 (Tr. 531). During her appointment with Dr. Williams on May 22, 2012, Plaintiff reported that she had hurt herself in a fall on May 15, 2012, but the x-rays were all negative (Tr. 530). On August 6, 2012, Plaintiff saw Dr. Williams for a routine checkup and refills of her medication (Tr. 529). Plaintiff saw Dr. Williams for the last appointment in the record on October 4, 2012, during which Plaintiff complained of ear pain and congestion (Tr. 528).

In a letter dated November 5, 2012, Dr. Williams noted a worsening of Plaintiff's condition, a diagnoses of fibromyalgia, and she opined that "[t]hough [Plaintiff] wants to work, it would be very difficult, if not impossible, due to her injuries" (Tr. 540).

7

### 4. Dr. Morton

On April 4, 2011, Plaintiff reported to the office of Dr. Morton for an all-systems exam and record review (Tr. 379-90). In assessing Plaintiff's range of motion, Dr. Morton opined that Plaintiff's strength in her extremities was normal, which is consistent with notes from treating physician Dr. Hazlewood (Tr. 382). In her statement regarding Plaintiff's ability to do work-related activities, Dr. Morton opined that Plaintiff could lift or carry up to ten pounds occasionally; sit, stand, or walk for 15 minutes at one time and for up to one hour total in an eight-hour work day; reach, handle, finger, feel, and push or pull occasionally with either hand; operate foot controls occasionally; and perform posturals occasionally (Tr. 385-88). Additionally, Dr. Morton opined that Plaintiff could complete activities such as shopping, traveling without a companion, preparing simple meals, and sorting or handling paper and files; the only activity on the list which Dr. Morton opined that Plaintiff could not complete was walking a block at a reasonable pace on rough or uneven surfaces (Tr. 389). Dr. Morton noted that Plaintiff was "trying to see if surgery [was] still a viable option" (Tr. 380).

### C. Hearing Testimony

On December 17, 2012, the ALJ conducted a hearing in Plaintiff's case (Tr. 42-70). The ALJ and a vocational expert ("VE") were present in person and Plaintiff and her attorney were present via video conferencing (Tr. 44). At the hearing, both Plaintiff and the VE testified. The Court has carefully reviewed the transcript of the testimony at the hearing, however, it is not necessary to summarize the hearing transcript herein.

## III.     ELIGIBILITY AND THE ALJ'S FINDINGS

### A.     Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since August 4, 2007, the alleged onset date (Tr. 28). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, moderate global hypokinesis with a moderately reduced ejection fraction, obesity, and bilateral shoulder tendinitis (Tr. 28). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 30). Specifically, the ALJ considered Listings 1.00 and 4.00, and the ALJ also considered the additional effects of Plaintiff's obesity (Tr. 30). The ALJ determined Plaintiff had the RFC to perform light work, except that she could only stand and walk four hours out of an eight-hour day; could only occasionally perform posturals; could never climb ladders, ropes, or scaffolds; and could frequently reach (Tr. 30-31). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 34). At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, on the alleged onset date, had a limited education, and was able to communicate in English (Tr. 34). After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grids"), the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 34-35). These findings led to the ALJ's

determination that Plaintiff was not under a disability at any time from August 4, 2007, the alleged onset through January 15, 2013, the date of the ALJ's decision (Tr. 35-36).

## IV.     ANALYSIS

As noted, Plaintiff alleges the ALJ erred by: (1) failing to give appropriate weight to the opinions of Dr. Williams and Dr. Fishbein; (2) failing to give appropriate weight to the consultative examiner's opinion; (3) failing to consider all of Plaintiff's severe impairments; (4) making an RFC assessment that is inconsistent with the medical evidence; and (5) improperly evaluating Plaintiff's credibility.  Plaintiff argues that the ALJ's errors require remand.  Each of Plaintiff's arguments will be addressed below.

### A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative

Case 4:13-cv-00040-HSM-SKL   Document 21   Filed 07/30/14   Page 11 of 27   PageID #: 677

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility

assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

## B. Weight Given to the Opinions of Dr. Williams and Dr. Fishbein

Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Dr. Williams and Dr. Fishbein. Plaintiff's arguments with respect to each of these doctors will be addressed in turn.

### 1. Dr. Williams's Opinion

Plaintiff argues the ALJ did not provide good reasons for discounting the opinion of Dr. Williams, a treating physician, that it would be difficult or impossible for Plaintiff to work. Plaintiff states that her diagnoses by Dr. Williams included chronic back pain, muscle spasms, degenerative disc disease, hypertension, depression, right knee pain, fibromyalgia, and anxiety. Plaintiff contends that the ALJ failed to properly consider Dr. Williams's opinion as required by SSR 96-2p, 1996 WL 374188 (July 2, 1996). Plaintiff also argues that Dr. Williams's treatment notes show that her symptoms and pain have worsened over time.

Defendant counters that Dr. Williams's statement that Plaintiff was unable to work was an opinion on an issue reserved to the Commissioner. Defendant also argues discounting Dr.

Williams's opinion was proper because the opinion was not supported by Dr. Williams's own treatment notes.

The ALJ specifically mentioned Dr. Williams's opinion, stating,

> As to claimant's anxiety disorder, although her treating physician, Karen M. Williams, M.D., has prescribed anxiolytic medication (Exhibit 26F), the record reflects no specialized mental health treatment. Furthermore, the psychological examiner, Thomas L. Pettigrew, Ed.D., did not diagnose claimant with anxiety disorder or assign any functional limitations relating to any mental impairment (Exhibit 8F).

(Tr. 29). The ALJ also noted Plaintiff's success in managing her pain under her prior treating physician, Dr. Hazlewood, and then again discussed her treatment with Dr. Williams, stating,

> Dr. Hazlewood recommended that claimant continue to work a regular job and did not feel she had a permanent disability . . . . Claimant stopped treating with Dr. Hazlewood in 2010. However, she has continued to present to another treating physician, Karen M. Williams, M.D., for medication management (Exhibits 5F, 25F).

(Tr. 32). The ALJ specifically discussed Dr. Williams's letter dated November 5, 2012, and acknowledged that Dr. Williams's letter states "though [claimant] wants to work, it would be very difficult, if not impossible, due to her injuries[,]" but the ALJ gave this opinion "little weight as it is unsupported by her treatment notes, which fail to document significant objective physical examination findings relating to claimant's alleged back, shoulder and neck pain" (Tr. 33).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §

404.1527(d)(2) (now (c)(2)) (alteration in original).  Even if the ALJ determines that the treating

source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial

deference or weight commensurate with "the length of the treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of

the opinion, consistency of the opinion with the record as a whole, and the specialization of the

treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009)

(quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996

WL 374188, at *4 (July 2, 1996)).  The ALJ is not required to explain how he considered each of

these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating

physician's opinion.  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

These reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight."  *Wilson*, 378 F.3d at 544 (quoting

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

    "However, 'a treating physician's opinion is only entitled to such . . . deference when it is

a medical opinion.'"  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013)

(alteration in original) (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th

Cir. 2010)).  Where a treating physician opines "on an issue reserved to the Commissioner—such

as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of

vocational factors—his decision need only explain the consideration given to the treating

source's opinion."  *Id.* (quoting *Turner*, 381 F. App'x at 493) (internal quotation marks omitted).

An opinion by a treating physician on such an issue reserved to the Commissioner "is not entitled

to any particular weight."  *Id.*

While Plaintiff is correct that the ALJ gave little weight to Dr. Williams's opinion that Plaintiff is unable to work, the ALJ did not err in doing so. The ALJ explained the consideration that she gave to Dr. Williams's opinion that Plaintiff cannot work, and the ALJ gave a thorough explanation as to why she discounted this opinion. As the law is clear that a treating physician's opinion on the issue of whether a claimant is unable to work is "entitled to no particular weight," *Johnson*, 535 F. App'x at 505, I **FIND** that the ALJ did not err in discounting Dr. Williams's opinion or in explaining why she discounted the opinion.

### 2. Dr. Fishbein's Opinion

Plaintiff alleges that the ALJ also erred when she discounted the opinion of Dr. Fishbein. Specifically, Plaintiff contends that the ALJ improperly gave little weight to Dr. Fishbein's opinion that Plaintiff was not medically able to return to work, because Plaintiff needed back surgery and had not reached maximum medical improvement. Plaintiff argues that the ALJ's reliance on Dr. Hazlewood's opinion to discount the opinion of Dr. Fishbein was misplaced, because Dr. Hazlewood was the workers' compensation physician to which Plaintiff was referred by her employer, so Plaintiff argues that Dr. Hazlewood was not impartial and unbiased when evaluating Plaintiff.

Defendant argues that the ALJ's decision to discount Dr. Fishbein's opinion is proper, because it conflicted with the opinion of Dr. Hazlewood, Plaintiff's treating physician, and because it was rendered just a year after her injury and prior to when she reached maximum medical improvement. Defendant also argues that Dr. Fishbein's opinion was properly given little weight by the ALJ because his opinion appeared to accept Plaintiff's subjective symptoms as fully credible despite contrary evidence in the record.

"As an examining rather than treating medical source," Dr. Fishbein "is 'entitled to no special degree of deference.'" *Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *5 (E.D. Mich. Mar. 27, 2014) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Furthermore, the ALJ did not ignore Dr. Fishbein's opinion, but rather discussed it in some detail before discounting the opinion because it was issued prior to Plaintiff's medical improvement and it was based on Plaintiff's subjective complaints (Tr. 33-34). I **FIND** that it was not error for the ALJ to give little weight to Dr. Fishbein's opinion and that it was not entitled to any specific deference. "In fact, since that finding was contradicted by treating source [Dr. Hazlewood's] opinion" that Plaintiff was not disabled, "it might have been error for the ALJ to adopt [Dr. Fishbein's opinion]." *See Cangialosi*, 2014 WL 1260711 at *5.

While Plaintiff, in her reply brief, argues that medical evidence in the record does support Dr. Fishbein's opinion, this is not sufficient to find the ALJ's decision is improper. As noted above, where there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court would have made a different decision, or if substantial evidence would have also supported other findings. *See Smith*, 99 F.3d at 782; *Ross*, 440 F.2d at 691. While some evidence in the record may support Dr. Fishbein's opinion, I **FIND** the ALJ's decision to discount the opinion of Dr. Fishbein is supported by substantial evidence.

### C.    Weight Given to the Opinion of Dr. Morton

Plaintiff next argues that the ALJ failed to give great weight to the opinion of Dr. Morton, a consultative examiner. Plaintiff summarizes Dr. Morton's medical findings, and argues that the ALJ committed reversible error by failing to give great weight to Dr. Morton's opinion regarding Plaintiff's limitations, which Plaintiff argues "clearly results in a less than sedentary RFC." [Doc. 16 at Page ID # 630]. Plaintiff argues that Dr. Morton's opinion was supported by

the record and thus should not have been discounted. Additionally, Plaintiff argues that the ALJ's decision to give great weight to the opinion of state agency physician Dr. Margaret Fountain, when she did not give great weight to the opinion of Dr. Morton, constituted a double standard and reversible error. In her reply brief, Plaintiff again summarizes Dr. Morton's medical findings. Plaintiff argues that because Dr. Morton both examined Plaintiff and reviewed some of her medical records, the opinion of Dr. Fountain, the state agency consultant who never examined Plaintiff, should not be given greater weight than the opinions of Dr. Morton, Dr. Williams, and Dr. Fishbein.

Defendant argues that the ALJ properly discounted Dr. Morton's opinion because it conflicted with the opinion of treating physician Dr. Hazlewood and appeared to accept Plaintiff's subjective complaints as fully credible despite conflicting evidence in the record. Defendant also argues that as a one-time examining physician, Dr. Morton's opinion was not entitled any special degree of deference.

As noted above, the opinion of an examining, non-treating physician is not entitled to any specific weight or deference. *Cangialosi*, 2014 WL 1260711 at *5. While an ALJ is required to provide good reasons for giving less than controlling weight to the opinion of a treating physician, there is no such requirement for medical opinions from non-treating physicians. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating* sources"). Plaintiff fails to cite to any legal authority in support of her contention that the ALJ erred by assigning greater weight to the opinion of a non-examining physician over the opinion of an examining physician. In fact, there is no requirement that an ALJ give more weight to the opinion of an examining source over the opinion of a non-examining source, such as a stage agency consultant. *Swafford v. Astrue*, No. 09-265-KSF, 2010

WL 2612325, at *4 (E.D. Ky. June 25, 2010) (citing *Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994)).[1]

Accordingly, I **FIND** that it was not error for the ALJ to give little weight to the opinion of Dr. Morton, a consultative examiner, and I further **FIND** that it was not error for the ALJ to give greater weight to the opinion of Dr. Fountain than to the opinions of Dr. Morton, Dr. Williams, and Dr. Fishbein.

### D. Consideration of Plaintiff's Severe Impairments

Plaintiff contends that the ALJ erred by giving no consideration to certain impairments, including fibromyalgia, arthritis, thyroid disease, hypertension, and cardiac disease. Plaintiff cites to her medical records in support of her argument that these impairments were severe. Plaintiff argues that the ALJ erred both by failing to find these impairments severe and by failing to provide reasons for not finding the impairments to be severe. In her reply brief, Plaintiff again argues that the ALJ gave no consideration to Plaintiff's fibromyalgia, arthritis, thyroid disease, hypertension, and cardiac disease, and states that the Defendant only argued that the ALJ had considered anxiety, hypertension, thyroid disease, and GERD, again contending the ALJ omitted some of her severe impairments from consideration.

Defendant argues that the ALJ found that Plaintiff had some severe impairments at step two of the sequential evaluation process, and thus it is legally irrelevant that her other impairments were not found to be severe. Additionally, Defendant argues that the ALJ properly

---

[1] Dr. Williams was a treating physician, not merely an examining physician. While an ALJ should usually give greater deference to the opinion of a treating physician over the opinion of a consultant (or other non-treating physician), as noted above, the ALJ's discounting of Dr. Williams's opinion as a treating source was proper, given that the opinion was on an issue reserved to the Commissioner. Because Dr. Williams's opinion was properly given little weight by the ALJ, it is not error that the ALJ gave greater weight to the opinion of Dr. Fountain, an agency consultant, over the opinion of Dr. Williams, a treating physician.

19

found that Plaintiff's anxiety, hypertension, thyroid disease, and gastroesophageal reflux disease ("GERD") were non-severe because they did not cause more than a minimal limitation on her ability to perform basic work activities. Defendant argues that the ALJ provided a sufficient rationale supported by substantial evidence as to why certain impairments were not severe. Defendant argues that the ALJ's determination that Plaintiff's fibromyalgia was not a severe impairment was proper, as the ALJ considered the fibromyalgia and noted that the record did not show the required testing. Defendant argues that the ALJ considered all of Plaintiff's impairments, both severe and non-severe, throughout the sequential evaluation process, both individually and in combination with each other.

At step two of the sequential evaluation process, the ALJ considered Plaintiff's GERD, hypertension, and thyroid disease, and found them to be non-severe as they did not cause more than a minimal limitation on Plaintiff's ability to perform basic work activities. The ALJ also considered Plaintiff's anxiety disorder, which he found to be non-severe due to a lack of specialized mental health treatment, the fact that it appeared to be well managed by medication, and based on an evaluation of the paragraph B criteria in Listing 12.00C, 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Additionally, the ALJ considered Plaintiff's fibromyalgia, which was non-severe because the record did not reflect the necessary testing and did not rule out that her symptoms might be a result of her other severe impairments rather than fibromyalgia. The ALJ did find that Plaintiff's degenerative disc disease, moderate global hypokinesis with a moderately reduced ejection fraction, obesity, and bilateral shoulder tendinitis were severe impairments. In the ALJ's RFC determination, the ALJ considered Plaintiff's arthritis in her knees, but noted that it was mild. The ALJ also considered Plaintiff's other impairments, both severe and non-severe, including degenerative disc disease, back pain, shoulder pain, neck pain, extremity pain and

numbness, chest pain, moderate global kinesis with moderate left ventricular systolic dysfunction (cardiac disease), and obesity.

The step two severity determination is a low bar: an impairment is only "not severe if it does not significantly limit your physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521. "Step two has been described as a *de minimis* hurdle; that is, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007)). The goal of step two's severity determination is to "screen out totally groundless claims." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).

When an ALJ makes a finding in step two that one or more impairments are severe, "the ALJ must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (internal quotation marks omitted) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant," and not reversible error. *Anthony*, 266 F. App'x at 457 (citing *Maziarz*, 837 F.2d at 244).

21

Here, the ALJ specifically found that Plaintiff's degenerative disc disease, moderate global hypokinesis with a moderately reduced ejection fraction, obesity, and bilateral shoulder tendinitis were severe impairments (Tr. 28). Contrary to Plaintiff's assertion, the ALJ did find Plaintiff's cardiac disease, moderate global hypokinesis with moderately reduced ejection fraction, to be a severe impairment. Although the ALJ found Plaintiff's other impairments to be non-severe in step two of her determination, the ALJ considered all of Plaintiff's alleged impairments, including her fibromyalgia, arthritis, thyroid disease, and hypertension in the remaining steps of the disability determination (Tr. 31). I **FIND** that the ALJ's determination at step two that Plaintiff's fibromyalgia, arthritis, thyroid disease, and hypertension were not severe impairments is legally irrelevant and I **CONCLUDE** the ALJ did not commit reversible error by deeming these impairments to be non-severe.

### E. The ALJ's Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC is not consistent with the medical evidence in the record. Specifically, Plaintiff finds fault with the ALJ's determination that Plaintiff is capable of performing light work with certain limitations, as Plaintiff contends that she is only capable of performing at a less than sedentary level. Plaintiff argues that the ALJ's inclusion of the limitation that Plaintiff can only stand and walk four hours out of an eight-hour day means that Plaintiff is only capable of sedentary work, not light work. Plaintiff also argues that the consultative examiner's report by Dr. Morton shows that Plaintiff's limitations limit her to a less than sedentary RFC. Additionally, Plaintiff argues that the ALJ was required to consider all of the evidence in making the RFC determination but failed to do so. Defendant argues that the ALJ's determination that Plaintiff had the RFC to perform a modified range of light work is supported by substantial evidence, including the opinions of treating

physician Dr. Hazlewood and agency experts Thomas Pettigrew, Dr. Fountain, and Dr. Judy Martin. In her reply brief, Plaintiff argues that the ALJ erred in making her RFC determination because it is not consistent with Dr. Williams's treatment history or with Dr. Fishbein's treatment records.

The ALJ's decision to give little weight to the opinions of Drs. Williams, Fishbein, and Morton has already been addressed above. The remaining issue for consideration is whether the ALJ's RFC determination is supported by substantial evidence in the record given the ALJ's decision to accord those medical opinions little weight.

Regarding Plaintiff's argument that a limitation to four hours of standing and walking in an eight-hour day would require a sedentary RFC finding, Plaintiff has not cited any legal authority in support of this argument. While the Court could deem this argument waived pursuant to E.D. Tenn. L.R. 7.1(b), I will nevertheless address it. Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Furthermore, "[e]ven though the weight lifted may be very little, a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* According to Social Security regulations, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at * 6 (Jan. 1, 1983). The regulations, however, "do[] not preclude *any* light work for an individual who cannot stand or walk for a total of approximately six hours of an 8-hour workday," but only state "that the *full range* of light work requires standing or walking for a total of approximately six hours." *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 WL 2434631, at *14 (N.D. Ohio May 29, 2014) (second emphasis

added) (finding that the ALJ's RFC determination—that the claimant who was limited to four hours of walking and standing in an eight-hour workday could perform less than a full range of light work—was consistent with SSR 83-10 and other regulations); s*ee also Strang v. Comm'r of Soc. Sec.*, No. 13-11270, 2014 WL 1207870, at *4, 13 (E.D. Mich. Mar. 24, 2014) (affirming the Commissioner's decision denying benefits where the ALJ assigned an RFC of light work with a limitation of only up to four hours of standing and walking in an eight-hour workday).

Here, the ALJ's RFC finding that Plaintiff can perform a modified range of light work is not inconsistent with statute or agency regulations. I therefore **FIND** that the ALJ's determination that Plaintiff has the RFC to perform light work with certain limitations, including a maximum of four hours of standing and walking in an eight-hour day, is proper.

Regarding Plaintiff's argument that the ALJ failed to consider all the evidence in the record as she was required to do, Plaintiff supports her argument with a single case from the United States District Court for the District of Columbia, *Martin v. Apfel*, 118 F. Supp. 2d 9 (D. D.C. 2000). This case is not binding on the Court and Plaintiff also failed to properly cite to it, and therefore the Court need not consider the case under the local rules.[2] In any event, the case is no different than the law that is applicable here. *See, e.g.*, *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (citing SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)) ("under the regulations, an ALJ must consider all relevant evidence in the case record"). More significantly, while Plaintiff argues the ALJ did not consider all of the evidence in the record, she

---

[2] Plaintiff cited to a legal electronic database instead of the official reporter in which the case was published. Under E.D. Tenn. L.R. 7.4, citations to federal decisions other than decisions of the United States Supreme Court "shall be made to the West reporter." "For authorities not available in one of the publications set forth above, citations to Westlaw, LexisNexis or other easily available non-subscription Internet legal research services will be accepted. The Court will **not** consider improperly cited authority." E.D. Tenn. L.R. 7.4.

does not specify which evidence the ALJ allegedly ignored (beyond the discounted medical opinions already addressed) in making the RFC determination.

After reviewing the ALJ's opinion, it is evident that the ALJ considered all of the evidence in the record based on the ALJ's summary of Plaintiff's impairments and medical history, as well as the ALJ's statement that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and had "also considered opinion evidence" (Tr. 31). Further, the ALJ clearly states that she made her RFC finding "[a]fter careful consideration of the entire record" (Tr. 30). Thus, I **FIND** the ALJ did consider all evidence in the record when making findings as to Plaintiff's RFC, and I **FIND** that substantial evidence does support the ALJ's RFC finding. I therefore **CONCLUDE** that the ALJ's RFC determination is proper.

F.       **Evaluation of Plaintiff's Credibility**

Plaintiff next argues that the ALJ erred by failing to properly assess and evaluate Plaintiff's credibility as required by SSR 96-7p, 1996 WL 374186 (July 2, 1996). Plaintiff quotes a large portion of this ruling and argues that while the ALJ stated she[3] used the criteria from SSR 96-7P in reaching her decision, merely "recit[ing] the factors that are described in the regulations for evaluating symptoms" is "not enough." *Id.* at *2. Plaintiff argues that the ALJ erred in making a credibility determination based upon Plaintiff's activities of daily living. Plaintiff argues that by focusing on these few activities of daily living, the ALJ ignored the medical evidence showing Plaintiff is disabled. Plaintiff also contends the ALJ erred by failing to state whether she found Plaintiff's testimony credible or not, or specifically what weight she

---

[3] While Plaintiff's argument refers to the ALJ as "he" and references "his" decision [Doc. 16 at Page ID # 635], the ALJ in this case is female.

25

gave to Plaintiff's testimony. Plaintiff argues that this constituted material error by the ALJ, and thus contends that the ALJ's decision should be reversed.

Defendant responds that the ALJ's credibility determination is properly stated in the decision, wherein the ALJ found Plaintiff's claims to be not fully credible. Defendant also argues that the ALJ's discounting of Plaintiff's credibility is supported by substantial evidence in the record.

As noted previously, assessing a claimant's credibility is a task entrusted to the ALJ, not the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers*, 486 F.3d at 247; *Jones*, 336 F.3d at 476. An ALJ is entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony." *White*, 572 F.3d at 287. Further, an ALJ's credibility assessment is entitled to great weight, and is even considered to be "virtually unchallengeable," *Ritchie*, 540 F. App'x at 511 (citations and internal quotation marks omitted), where the assessment is fully explained and is not at odds with uncontradicted evidence in the record, *King*, 742 F.2d at 974-75.

Here, the ALJ explained her assessment of Plaintiff's credibility, stating:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 33). In discounting Plaintiff's credibility, the ALJ specifically considered Plaintiff's conservative treatment, the fact that her treating physician considered her not to be a good surgical candidate due to her pain behavior, and evidence of symptom magnification in the record (Tr. 33-34). The ALJ also considered Dr. Pettigrew's assessment that Plaintiff's reliability was "questionable" as to her reported activities of daily living, as well as Dr.

Pettigrew's belief that Plaintiff was likely exaggerating her physical symptoms (Tr. 34). Additionally, the ALJ considered the fact that Dr. Hazlewood also found evidence of symptom magnification (Tr. 34). Accordingly, I **FIND** the ALJ's decision to discount Plaintiff's credibility was proper and supported by substantial evidence in the record.

## V.       CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[4] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 15] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 17] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).